IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| *In re:* | § | |
| | § | |
| CAMP ARROWHEAD, LTD., | § | |
| | § | |
| *Debtor.* | § | |
| | § | |
| COOLWATER, LLC, | § | |
| | § | |
| *Appellant*, | § | Civil Action No. SA-10-CV-171-XR |
| | § | Consolidated with |
| v. | § | Civil Action No. SA-10-CV-170-XR |
| | § | Bankruptcy Case No. 09-54693-lmc |
| CAMP ARROWHEAD, LTD., | § | |
| | § | |
| *Appellee.* | § | |

**ORDER ON MOTION TO DISMISS**

On this date, the Court considered Appellee's Motion to Dismiss Appeal as Moot (Docket Entry No. 11). Having considered the motion, Appellant's response, the available briefing, and record, the motion is GRANTED.

**Background**

Appellee Camp Arrowhead, Ltd. owned approximately 650 acres of real property located in Hunt, Kerr County, Texas. On April 15, 2009, Camp Arrowhead stated it would entertain an offer from Appellant Coolwater, LLC, to buy the property for $6,500,000.00. Coolwater states that it had an option contract to purchase the property, while Camp Arrowhead denies that it provided Coolwater with an enforceable option period. On April 20, 2009, Glenn and Suzanne Youngkin offered to purchase the property for $6,750,000.00, and Camp Arrowhead withdrew its offer to sell the property to Coolwater. Camp Arrowhead executed the Youngkins' offer and the Youngkins have assigned their rights to P&O Ranch, LLC. Coolwater made an escrow deposit and filed suit against

Camp Arrowhead in Texas state court, seeking specific performance of the alleged contract.[1]

On November 30, 2009, Camp Arrowhead declared bankruptcy, which Coolwater claims was a litigation tactic. In the Bankruptcy Court, Coolwater filed a motion to dismiss, alleging that the bankruptcy had been filed in bad faith or for an illegitimate purpose. The Bankruptcy Court denied the motion, and Camp Arrowhead sought and was granted authorization to sell the property. The Bankruptcy Court approved the sale, finding that the Youngkins were good faith purchasers. On March 2, 2010, Camp Arrowhead closed the sale of the property pursuant to the sale order.[2]

## Procedural History

Coolwater appealed the Bankruptcy Court's denial of the motion to dismiss[3] and the Bankruptcy Court's order authorizing the sale of the property on February 26, 2010.[4] This Court consolidated the appeals.[5] Camp Arrowhead, having sold the real property that forms the basis of this dispute, moved the Court to dismiss the appeal as moot.[6] The Court extended the remaining deadlines in the briefing scheduling while the motion to dismiss was pending.[7] Coolwater has

---

[1] *See Coolwater, LLC v. Camp Arrowhead, Ltd.*, No. 09404B (198th Dist. Ct., Kerr County, Tex., pet. filed Apr. 24, 2009).

[2] No stay of the sale was issued.

[3] *Coolwater, LLC v. Camp Arrowhead, Ltd. (In re Camp Arrowhead, Ltd.)*, No. SA-10-CV-170-XR (W.D. Tex. filed Feb. 26, 2010).

[4] *Coolwater, LLC v. Camp Arrowhead, Ltd. (In re Camp Arrowhead, Ltd.)*, No. SA-10-CV-171-XR (W.D. Tex. filed Feb. 26, 2010).

[5] Order on Mot. to Consolidate, Mar. 8, 2010 (Docket Entry No. 5).

[6] Mot. to Dismiss Appeal as Moot, Mar. 25, 2010 (Docket Entry No. 11).

[7] Order on Mot. to Extend Deadlines, Mar. 30, 2010 (Docket Entry No. 13).

responded to the motion,[8] and Camp Arrowhead has replied.[9]

**Legal Standard**

"Whether an appeal is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy."[10] "An appeal is properly dismissed as moot when an appellate court lacks the power to provide an effective remedy for an appellant, even if the court were to find in the appellant's favor on the merits."[11] It is well established that a court hearing an appeal from a bankruptcy court does not consider arguments or claims not presented to the bankruptcy court.[12]

**Analysis**

Camp Arrowhead argues that the appeal is moot because there is no relief that this Court can grant that would change the outcome of the proceedings. Camp Arrowhead closed the sale of property to the Youngkins on March 2, 2010. Section 363 of Title 11 provides:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or

---

[8] Resp. to Mot. to Dismiss Appeal as Moot, Apr. 1, 2010 (Docket Entry No. 15).

[9] Reply to Resp. to Mot. to Dismiss Appeal as Moot, Apr. 15, 2010 (Docket Entry No. 17)

[10] *Bailey v. Southerland*, 821 F.2d 277, 278 (5th Cir. 1987).

[11] *Schum v. Zwirn Special Opportunities Fund LP (In re Watch Ltd.)*, 295 Fed. Appx. 647, 650 (5th Cir. 2008) (citing *Sullivan Cent. Plaza, I, Ltd. v. BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza, I, Ltd.)*, 914 F.2d 731, 735 (5th Cir. 1990)).

[12] *Ginther v. Ginther Trusts (In re Ginther Trusts)*, 238 F.3d 686, 688–89 (5th Cir. 2001) (per curiam) (quoting *Gilchrist v. Westcott, (In re Gilchrist )*, 891 F.2d 559, 561 (5th Cir. 1990)).

lease were stayed pending appeal.[13]

The sale of property to a good faith purchaser that occurred without a stay pending appeal cannot be reversed or modified.[14] Coolwater admits that a stay of the sale was not obtained and that the sale occurred on March 2, 2010.[15] Therefore, the only issue in dispute is whether the Youngkins qualified as good faith purchasers.

A determination that the purchaser acted in good faith is required for the safe harbor provision of section 363(m) to apply.[16] In this case, the Bankruptcy Court found that the purchasers acted in good faith: "There is no doubt that this is, in fact, an arm-length purchase by a disinterested third party. . . . The sale is in good faith, and will be approved, pursuant to Section 363(m) and 363(f)."[17]

Coolwater appealed the Bankruptcy Court's Sale Order, claiming that the finding that the Youngkins are good faith purchasers is clearly erroneous. Coolwater contends that the District Court "cannot come to a conclusion regarding the Youngkins' good faith without a full examination of the bankruptcy court's finding of good faith—an examination this Court cannot undertake without

---

[13] 11 U.S.C. § 363(m).

[14] *In re Ginther Trusts*, 238 F.3d at 688–89

[15] Resp. at 4.

[16] *In re Sullivan Cent. Plaza, I, Ltd.*, 914 F.2d at 734 ("Section 363(m), the statutory protection applicable to sales or leases by the trustee and authorized by the bankruptcy court, expressly requires good faith before effectively rendering moot an appeal from that court's authorization.").

[17] Tr. 9:5–7, 19–20 (Jan. 6, 2010).

considering the merits of Coolwater's appeal."[18] Appellant appears to have briefly raised the issue before the Bankruptcy Court even if Coolwater does not appear to have fully argued the issue before the Bankruptcy Court.[19]

The Court will evaluate the merits of Appellant's challenge to the Youngkins' status as good faith purchasers to determine if this appeal is moot.[20] Such a finding prevents a court from modifying or reversing the sale of property and would prevent this Court from providing any relief to Coolwater. Section 363(m) does not define "good faith," but the Fifth Circuit has characterized a good faith purchase in bankruptcy as one that lacks "fraud, collusion between the purchaser and

---

[18] Resp. at 2.

[19] "Although . . . a challenge to whether the purchaser was a 'good-faith' purchaser is not made moot by a subsequent sale, it is well established such a challenge may not be raised for the first time on appeal to the district court." *In re Watch Ltd.*, 257 at 750. The Court has reviewed the transcript of proceedings. There is no argument provided by Coolwater in which it challenges the Youngkins' status as good faith purchasers. Camp Arrowhead, however, referenced the Youngkins' status to meet the requirements to obtain a Sale Order from the Bankruptcy Court. *See* Tr. 75:24–76:21.

The Court has taken judicial notice of Coolwater's amended objection to Camp Arrowhead's motion for the Bankruptcy Court to authorize the sale. *See* Am. Objection to Debtor's Mot. for Order to Authorize the Sale of Substantially All of the Debtor's Assets Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances and the Assumption of Executory Contract, *In re Camp Arrowhead, Ltd.*, No. 09-54693 (Bankr. W.D. Tex. Jan. 5, 2010) (Bankr. Docket Entry No. 36). Coolwater argues in its objection that Camp Arrowhead's bankruptcy was not in good faith. In one single line in its objection, Coolwater asks the Bankruptcy Court to deny Camp Arrowhead's request to sell the property "because this is nothing more than an attempt to take grossly unfair advantage of other bidders." *Id.* at 7 (citing *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. Unit B Jan. 1981)). Footnote 7 in *In re Bleaufontaine* defines "good faith purchaser." Therefore, the issue was raised before the Bankruptcy Court and is properly before this Court on appeal.

[20] *See Hytken v. Williams (In re Beach Dev. L.P.)*, No. 07-20350, 2008 WL 2325647 (5th Cir. June 6, 2008) (upholding district court's dismissal of appeal as moot that also determined, in the alternative, that sale order was properly entered by bankruptcy court); *see also Hytken v. Williams*, No. H-06-2169, 2007 WL 1003421 (S.D. Tex. Mar. 30, 2007) (dismissing appeal as moot and alternatively finding that bankruptcy court properly entered sale order).

other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[21]  A bankruptcy court's findings of fact are reviewed for clear error.[22]  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[23]

In its Appellant's Brief, Coolwater argues that the record shows that the Youngkins purchased the property lacking good faith and with notice of adverse claims.[24]  Coolwater points the Court to deposition testimony to show that the Youngkins negotiated with Robert Bartell, one of the Camp Arrowhead partners,[25] rather than the Sales Committee formed to negotiate the sale of the property.  They claim that the Youngkins "continued exclusive communication with Rob (via e-mails, phone calls, and a personal visit) and Rob's lawyer demonstrates an overt attempt to circumvent the proper process for obtaining the property, which, in turn, demonstrates collusion and

---

[21]*In re Bleaufontaine, Inc.*, at 1388 n. 7 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

[22]*Texas v. Soleau (In re Soileau)*, 488 F.3d 302, 305 (5th Cir. 2007).

[23]*In re First S. Savs. Ass'n*, 820 F.2d 700, 711 (5th Cir. 1987) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

[24]Appellant's Br. 35, Mar. 17, 2010 (Docket Entry No. 10).

[25]The Appellee/Debtor, Camp Arrowhead, is a Texas limited partnership owned by three siblings: Kathleen Bartell Martin, Mark Bartell, and Robert Ewing Bartell.  Robert is manager of the Debtor's general partner and operated a children's camp on a portion of the property.  Kathleen commenced a lawsuit against Robert in Texas state court and Mark intervened against Robert, asserting causes of action for breach of contract, breach of fiduciary duty, and self-dealing.  The siblings reached a settlement and decided to sell the property through a Sales Committee, consisting of one lawyer for each sibling.  The Sales Committee was charged with the duty to negotiate a sale of the property for $6,500,000.00 or higher.

an attempt to take unfair advantage of Coolwater."[26] The Youngkins made an offer to Robert Bartell, which was rejected, and they then discussed the price to beat and offered $6,575,000. Coolwater contends that the sharing of information regarding Coolwater's offer and the amount of that offer violated the terms of a confidentiality agreement signed between the Sales Committee and Coolwater, which stated that Coolwater's offer and interest in the property would not be disclosed. Coolwater also questions the brief time period by which the Youngkins' offer would expire, characterizing it as an attempt to circumvent the bidding process.[27]

Camp Arrowhead addresses Coolwater's challenges to the Youngkins' status as good faith purchasers.[28] Camp Arrowhead presents testimony of Glenn Youngkin, proffered before the Bankruptcy Court, in which he discusses how he learned that Camp Arrowhead was for sale and that he estimated that he would need to offer to buy the property at a price above $6,500,000. He further states that he did not learn that Coolwater was also asserting a right to purchase the property until after his revised offer had been accepted by Camp Arrowhead. Youngkin further testifies that he is not an insider of Camp Arrowhead, has no previous contacts with the Debtor or its partners, and he holds no interest adverse to the Debtor.

The Court has reviewed the transcript of the proceeding before the Bankruptcy Court, the deposition testimony, and supporting evidence cited in Appellant's Brief. The testimony shows that the Youngkins sought to purchase the property out of their own personal interest, and they were not

---

[26] Br. at 36.

[27] Br. at 38 ("The Debtor's decision to seek a rushed sale of the Property without a competitive auction further smacks of collusion.").

[28] *See* Reply; Tr. at 20:25–24:15.

solicited by the Debtor to purchase the property. Glen Youngkin claims that he calculated a final offer based on the rejection of his initial offer and an estimate for the costs of environmental clean-up and title defects. Coolwater claims that the sharing of information regarding Coolwater's offer and the amount of that offer violated the express terms of the Confidentiality Agreement. . . . [giving] the Youngkins notice of Coolwater's adverse claim to the Property."[29] The settlement agreement stated that the Sales Committee would entertain offers of $6,500,000 or more. Any rejection of the Youngkins' initial offer could reasonably have been based on the requirement that the Sales Committee obtain a minimum of $6,500,000 for the property. The evidence before the Bankruptcy Court is sufficient to establish that the Youngkins did not obtain the property by fraud, that the Youngkins were neither solicited by the Debtor or one of its agents, nor that the Youngkins' actions were grossly unfair to other bidders. After reviewing the evidence, the Court is not left with a definite and firm conviction that a mistake has been committed. Therefore, the Court must affirm the finding of the Bankruptcy Court that the Youngkins were good faith purchasers. Deciding Coolwater's appeal of the Sale Order would be plainly advisory because there is no remedy available.

Coolwater has also appealed the Bankruptcy Court's denial of its motion to dismiss Camp Arrowhead's bankruptcy. Coolwater states that it is not attempting to invalidate the sale of the property by appealing the dismissal order. "Rather . . . , Coolwater requests that this Court reverse the bankruptcy court's Denial of Dismissal Order and dismiss Camp Arrowhead's bankruptcy."[30]

---

[29]Br. at 38.

[30]Resp. at 8.

Appellant claims that "[t]his remedy is indisputably viable."[31] While a Court is within its authority to reverse a bankruptcy court's denial of a motion to dismiss pursuant to 11 U.S.C. § 1112(b), Coolwater's response fails to explain what remedy it seeks. "The mootness doctrine is grounded primarily and originally in the appellate court's inability to fashion relief."[32] If Coolwater sought monetary relief, then it may have a basis for continuing its appeal.[33] In this case, however, Coolwater has requested that the Court reverse the Bankruptcy Court's denial of Coolwater's motion to dismiss. The effect of such a reversal would be to invalidate the sale of the property, to the detriment of the Youngkins. "Where, as here, the only relief sought would cancel rights granted a third party pursuant to the bankruptcy court's order, the appeal becomes moot because the [appellate court] is powerless to grant such relief."[34]

## Conclusion

Appellee's motion to dismiss is GRANTED. Because Appellant failed to obtain a stay of the sale of the Debtor's property pending appeal, and because there is a sufficient record to support the Bankruptcy Court's finding that the sale was in good faith, the appeal of the sale order is DISMISSED AS MOOT under 11 U.S.C. § 363(m). Furthermore, the appeal of the dismissal order is DISMISSED AS MOOT since the Court is unable to fashion any relief that would not cancel the rights granted a third party pursuant to the bankruptcy court's order.

---

[31]*Id.*

[32]*In re Sullivan Cent. Plaza, I, Ltd.*, 914 F.2d at 733–34.

[33]*See id.* at 733 n.6 (citing *Am. Grain Ass'n v. Lee Vac. Ltd.*, 630 F.2d 245, 248 (5th Cir. 1980)).

[34]*Am. Grain Ass'n*, 630 F.2d at 248.

Accordingly, the consolidated appeal is DISMISSED in its entirety. The Clerk is directed to close the consolidated appeal.

SIGNED this 20th day of April, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE